## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| A.P. and Y.Z.,<br><br>                                   Plaintiffs,<br><br>        v.<br><br>CHA   HEALTH   SYSTEMS,   INC., COMPREHENSIVE  HEALTH  FOR  ALL FERTILITY MEDICAL GROUP, INC., CHA HEALTH  SYSTEMS,  INC.,  D/B/A  CHA FERTILITY CENTER LOS ANGELES, CHA FERTILITY   CENTER   LOS   ANGELES, JOSHUA  J.  BERGER,  M.D.,  and  SIMON HONG, PH.D.,<br><br>                                   Defendants. | Civil Action No.<br>ECF Case<br><br>Hon.<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiffs, A.P. and Y.Z., residing in Flushing, New York, complaining of Defendants, by and through the attorneys of record, Frier & Levitt, LLC, and hereby allege causes of action against the Defendants, and each of them, as follows:

### JURISDICTION AND VENUE

1.      Plaintiffs, A.P. and Y.Z., are citizens of the state of New York.

2.      Plaintiffs are utilizing their initials to protect their privacy in an attempt to minimize the embarrassment and humiliation already caused by the Defendants herein.

3.      At all times relevant to this complaint, CHA HEALTH SYSTEMS, INC. ("CHA Health") is a California corporation with its principal place of business at 3731 Wilshire Boulevard, Los Angeles, California.

4.      At all times relevant to this complaint, CHA FERTILITY CENTER LOS ANGELES ("CHA Fertility") is a California corporation with its principal place of business at 5455 Wilshire Boulevard, Los Angeles, California.

1

5.      At all times relevant to this complaint, COMPREHENSIVE HEALTH FOR ALL FERTILITY MEDICAL GROUP, INC. ("Comprehensive") is a California corporation with its principal place of business at 5455 Wilshire Boulevard, Los Angeles, California.

6.      At all times relevant to this complaint, CHA HEALTH SYSTEMS, INC. ("CHA Health Systems") is a California corporation with its principal place of business at 3731 Wilshire Boulevard Suite 850, Los Angeles, California.

7.      At all times relevant to this complaint, Defendants, CHA HEALTH SYSTEMS INC., d/b/a CHA FERTILITY CENTER LOS ANGELES, CHA HEALTH SYSTEMS, INC., d/b/a COMPREHENSIVE HEALTH FOR ALL FERTILITY MEDICAL GROUP, INC., and CHA HEALTH SYSTEMS, INC., were owners, operators, and/or managers of CHA Fertility and/or Comprehensive whose business address is 5455 Wilshire Boulevard, Los Angeles, California.

8.      At all times relevant to this complaint, Defendant, Joshua Berger, M.D., was a citizen of the State of California.

9.      At all times relevant to this complaint, Defendant, Simon Hong, Ph.D., was a citizen of the State of California.

10.     At all times relevant to this complaint, Defendants, Joshua Berger, M.D. and Simon Hong, Ph.D., were medical providers involved in the Plaintiffs' in vitro fertilization ("IVF") treatment.

11.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and plaintiffs and defendant are citizens of different states.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) because a substantial part of the events giving rise to Plaintiffs' claims occurred, in part, in this District, and because Defendants conduct substantial business in this District.

13.     Upon information and belief Defendants solicited patients in the State of New York.

14.     Upon information and belief Defendants derived substantial revenue from the State of New York.

15.     Upon information and belief Defendants engaged in systematic and continuous activity within the State of New York.

16.     Defendants caused a harm to occur within the State of New York and to citizens of the State of New York.

## FACTS COMMON TO ALL COUNTS

17.     Defendant, CHA Fertility, is a medical facility, with a principal place of business located at 5455 Wilshire Boulevard, Los Angeles, California.

18.     Defendant, CHA Fertility, is a business organized primarily for the purpose of helping individuals conceive through IVF.

19.     Defendant, Comprehensive, is a medical group specializing in Reproductive and Endocrinology and Infertility.

20.     Defendant, CHA Health Systems, is a business organized primarily for the purpose of providing operations and management of medical facilities.

21.     At all times relevant to this Complaint, Defendant, Joshua Berger, M.D., was an owner of CHA Fertility.

22.     At all times relevant to this Complaint, Defendant, Joshua Berger, M.D., was an owner of Comprehensive.

23.     At all times relevant to this Complaint, Defendant, Joshua Berger, M.D., was the Medical Director at CHA Fertility and Comprehensive.

24.     At all times relevant to this Complaint, Defendant, Joshua Berger, M.D., was an employee of CHA Fertility and Comprehensive.

25.     At all times relevant to this Complaint, Defendant, Simon Hong, Ph.D., was an owner of CHA Fertility.

26.     At all times relevant to this Complaint, Defendant, Simon Hong, Ph.D., was an owner of Comprehensive.

27.     At all times relevant to this Complaint, Defendant, Simon Hong, Ph.D., was the Laboratory Director at CHA Fertility and Comprehensive.

28.     At all times relevant to this Complaint, Defendant, Simon Hong, Ph.D., was an employee of CHA Fertility and Comprehensive.

29.     Plaintiffs are informed and believe and, based upon such information and belief, allege that at all times relevant herein the Defendants, and each of them, were the agents, servants, partner, aider, and abettor, co-conspirator, employees and joint ventures of each other and at all times herein mentioned each and all were operating and acting within the course, scope and purpose of their respective agency, service, employment, partnership, conspiracy, and joint venture relationships and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty owed to Plaintiffs.

30.     At all times relevant to this complaint, Plaintiffs had a contract with Defendant, CHA Health Systems.

31.     At all times relevant to this complaint, Plaintiffs had a contract with CHA Fertility.

32.     At all times relevant to this complaint, Plaintiffs had a contract with Comprehensive.

33.     At all times relevant to this Complaint, Defendants held themselves out as experts in the field of IVF.

34.     At all times relevant to this Complaint, Defendants collected, fertilized and stored Plaintiffs' genetic material in their premises located in Los Angeles, California.

35.     At all times relevant to this Complaint, Defendant knew that Plaintiffs resided in New York, and intended to reside in New York for the duration of the IVF procedure and subsequent pregnancy.

36.     Plaintiffs were married on August 6, 2012. From the time of their marriage through the present, Plaintiffs desired to conceive, deliver and raise children of their own.

37.     Plaintiffs' attempts to conceive a child through natural measures was unsuccessful. As result, Plaintiffs sought alternative measures to conceive a child, including artificial insemination.

38.     Unfortunately, despite their attempts at natural and alternative measures, Plaintiffs were unable to conceive a child.

39.     In or around, late 2018, Plaintiffs learned of CHA Fertility and their reported success in IVF.

40.     Plaintiffs reviewed CHA Fertility's website and promotional advertisements in deciding whether to consider Defendants for their infertility treatment.

41.     Defendants' website and promotional materials contain representations about Defendants and its operations. Defendants' website represents that CHA Fertility is one of the "premier fertility treatment networks in the world." See www.chaivf.com

42.     Defendants' website represents that Defendants are "known as the 'mecca of reproductive medicine' with world-class treatments for infertility." See www.chaivf.com

43.     Defendants' website represents that Defendants "ensure each [patient] receives the most appropriate and advanced treatment necessary." See www.chaivf.com

44.     Defendants' website represents that Defendants "understand every patient is unique, and we pride ourselves on providing the highest degree of personalized care delivered with the utmost sense of duty." See www.chaivf.com

45.     Defendants' website represents that Defendants "helped thousands of international aspiring parents from over 20 countries." See www.chaivf.com

46.     Defendants' website represents that their "level of care combined with our laboratory expertise allows us to achieve our high success rates." See www.chaivf.com

47.     Plaintiffs are informed and believe and, based upon such information and belief, allege that Defendants have purposefully availed themselves of the benefits of doing business in the State of New York through their marketing, promoting, and selling their IVF services, by placing it into the stream of commerce for those purposes, and by marketing, promoting, and selling and their IVF services to Plaintiffs in the State of New York.

48.     It was these representations, among other things, that caused Plaintiffs to select CHA Fertility for their IVF services.

49.     On or about January 9, 2018, Plaintiffs traveled to CHA Fertility in Los Angeles to meet with employees of CHA Fertility, including Defendant Berger, and Defendant Hong.

50.     At that meeting, Plaintiffs and representatives of CHA Fertility discussed the IVF process, including the risks.

51.     Both Plaintiffs intended to have embryos created using Plaintiff A.P.'s eggs and Y.Z.'s sperm.

52.     Plaintiffs' desires and intent were clearly, unequivocally and repeatedly documented in the CHA Fertility contract and associated records.

53.     After meeting with Defendants' representatives, Plaintiffs entered into a contract with Defendants for IVF treatments.

54.     Plaintiffs paid substantial amounts of money for the IVF services, including but not limited to facility fees, specialist services, medication, doctors' fees, laboratory expenses, travel expenses, and other related costs and fees, in excess of $100,000.

55.     Plaintiff, A.P., was provided a specific schedule for the growth of her eggs, including the use of medications and vitamins, monitoring of ovarian response, submitting to blood testing, and ultrasound examinations.

56.     On January 9, 2018, Plaintiff Y.Z. produced sperm as part of the IVF protocol.

57.     On January 9, 2018, Defendants conducted a sperm analysis.

58.     On February 9, 2018, Plaintiff A.P. went to CHA Fertility for egg retrieval in connection with the IVF protocol.

59.     After the sperm and egg donations were completed, the process continued and embryos were formed.

60.     Subsequently, the embryos were tested, including Preimplantation Genetic Screening ("PGS") performed by PacGenomics Genetics Laboratory on February 15, 2018.

61.     According to the PGS report, eight embryos were tested and five were determined to be euploidy, and three aneuploidy. Of the five euploidy embryos, four were determined to be female, and one male.

62.     Thereafter, on February 14, 2018, five of eight embryos were cryopreserved, and on February 18, 2018, three of eight embryos were cryopreserved. This procedure was performed by, and/or at the direction of Defendant Hong.

63.     From February 2018 through July 2018, Plaintiff A.P. followed the IVF protocol as directed by Defendant Berger and CHA Fertility. This included ingesting various medications, prenatal vitamins, undergoing testing and procedures, and other strict guidelines provided by Defendant Berger and CHA Fertility.

64.     During this period of time, Defendant Berger, CHA Fertility and Comprehensive issued and submitted doctor's orders to Plaintiff A.P.'s ob/gyn provider in New York, as well as labs located in New York.

65.     On July 16, 2018, Plaintiff A.P. went to CHA Fertility's facility to undergo an ultrasound guided embryo replacement of one of Plaintiffs' female embryos. This transfer was performed under the direction and care of Defendant Hong, Defendant Berger, CHA Fertility and Comprehensive.

66.     Unfortunately, this transfer did not result in a pregnancy.

67.     Plaintiffs decided they wanted to try again and discussed same with Defendants.

68.     In accordance with the planned transfers, Defendants thawed two female embryos for transfer to Plaintiff A.P.

69.     On August 20, 2018, Plaintiff A.P. traveled back to CHA Fertility's facility to undergo an ultrasound guided embryo replacement of two of plaintiffs' female embryos. The two embryo transfers were performed under the direction and care of Defendant Hong, Defendant Berger, CHA Fertility and Comprehensive.

70.     On or about September 17, 2018, Plaintiff A.P.'s ob/gyn confirmed that she was pregnant with twins.

71.     Plaintiffs were ecstatic to learn that after years of trying to conceive, they had success and were pregnant with twins.

72.     Plaintiff A.P. continued to follow the medical advice of her physicians, including undergoing sonograms and routine obstetrical examinations.

73.     At Plaintiff A.P.'s three and five-month sonograms, the sonographer advised Plaintiffs that Plaintiff A.P. was carrying two boys. Plaintiffs were confused by the results since, according to Defendant Hong, Defendant Berger, CHA Fertility and Comprehensive, only one male embryo existed and was not transferred to Plaintiff A.P.

74.     Plaintiffs called Defendant Berger and Defendant Hong to discuss the sonogram results. Defendant Hong and Defendant Berger advised Plaintiffs that the sonogram results were not accurate and that it was not a definitive test.

75.     During the calls, both Defendant Hong and Defendant Berger confirmed that the PGS genetic testing revealed five embryos: four female and one male.

76.     In a further effort to conceal from Plaintiffs that the sonogram was wrong, Defendant Berger explained that when his wife was pregnant, they were told they were having a boy and ultimately had a girl.

77.     Defendant Berger and Defendant Hong assured Plaintiffs that they were having girls and that nothing was wrong.

78.     Plaintiffs relied on Defendant Berger and Defendant Hong and accepted their representations.

79.     On March 30, 2019, Plaintiff A.P. was admitted to a hospital in New York and on March 31, 2019, Plaintiff A.P. gave birth via caesarean section to two male babies, neither of which was of Asian descent.

80.     Plaintiffs were shocked to see that the babies they were told were formed using both of their genetic material did not appear to be.

81.     Plaintiffs called Dr. Berger to advise him that Plaintiff A.P. had delivered two male babies that did not appear to be of Asian descent.

82.     On or about April 2, 2019, representatives of Defendants, including Dr. Hong, Yumie Lee, and Kim Young Sook, traveled to New York to meet with Plaintiffs at the hospital.

83.     At the Defendants request, Plaintiffs agreed to submit themselves and the babies to DNA testing to confirm their beliefs.

84.     The testing confirmed that neither Plaintiff A.P. nor Plaintiff Y.Z. were genetically related to the two male babies.

85.     The testing also confirmed that the two male babies were not genetically related to each other.

86.     Unbeknownst to Plaintiffs at the time, Defendants investigated the matter and contacted two other couples who went for treatment at CHA Fertility/Comprehensive.

87.     Subsequently, the testing revealed that Baby A was genetically matched to Couple A, and Baby B was genetically matched to Couple B.

88.     As a result, Plaintiffs were required to relinquish custody of Baby A and Baby B, thus suffering the loss of two children.

89.     Plaintiffs have suffered significant and permanent emotional injuries for which they will not recover.

90.     In addition, Plaintiff A.P. underwent physical and emotional injuries for which she is still under the treatment of medical providers and will continue to be in the future.

91.     Defendants have not advised Plaintiffs what happened to the Plaintiffs' own two embryos that were supposed to be transferred to Plaintiff A.P. on August 20, 2018.

92.     Upon information and belief, the two female embryos that Plaintiffs believed were transferred to Plaintiff A.P. were never thawed and/or lost or destroyed by Defendants.

93.     Defendants are continuing to wrongfully conceal the whereabouts of Plaintiffs' two embryos that we know were not transferred to Plaintiff, A.P.

### FIRST COUNT
### *Medical Malpractice*

94. Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

95. At all relevant times to this Complaint, Defendants, its agents and/or employees undertook to treat, monitor and care for Plaintiffs and their genetic materials.

96. Defendants had a duty to act in a manner consistent with the standards governing IVF, including performing the procedures according to the industry standard, obtaining informed consent regarding the procedures as understood and agreed to by the parties, disclosing the risks associated with the procedures, and performing the procedures as agreed upon and memorialized in the parties' agreements.

97. Defendants had a duty to use reasonable and proper care in their efforts to monitor, treat, and care for Plaintiffs and their genetic materials.

98. Defendants, jointly and severally, acting by themselves and through their agents and/or employees, failed to use due, reasonable and proper care of Plaintiffs and their genetic materials, and deviated from accepted standards of medical care prevailing in the area of IVF, and Defendants failed to exercise the knowledge, skill and diligence, which as healthcare professionals they should have possessed and exercised on behalf of the Plaintiffs, and were otherwise careless, reckless, and negligent.

99. More specifically, Defendants failed to properly identify, label, handle, store, cryopreserve, thaw and transfer Plaintiffs' embryos.

100.    Plaintiffs' genetic materials and the resulting embryos remained in the custody, care and control of Defendants at all times.

101.    On August 20, 2018, Defendants, its agents, and/or employees failed to properly transfer the Plaintiffs' own embryos to Plaintiff A.P.

102.    On August 20, 2018 Defendants, its agents, and/or employees, negligently transferred embryos to Plaintiff A.P. which were made up of the genetic materials of Couple A and Couple B.

103. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered damages, including but not limited to, loss of embryos belonging to them and the loss of two children born to Plaintiff A.P.

104. Plaintiffs' damages would not have occurred but for the negligence of Plaintiffs.

105. Plaintiffs did not cause or contribute to the Defendants' actions and the resulting damages.

106. Plaintiffs will rely on the doctrine of res ipsa loquitur in proving their claims.

107. As a result of the foregoing, Plaintiffs sustained financial loss and severe emotional distress and will continue to suffer emotional distress and financial loss

## SECOND COUNT
### Negligence

108. Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

109. At all relevant times to this Complaint, Defendants, its agents and/or employees undertook to treat, monitor and care for Plaintiffs and their genetic material.

110. Defendants had a duty to act in a manner consistent with the standards governing IVF, including performing the procedures according to the industry standard, obtaining informed consent regarding the procedures as understood and agreed to by the parties, disclosing the risks associated with the procedures, and performing the procedures as agreed upon and memorialized in the parties' agreements.

111. Contrary to this duty, Defendants failed to exercise reasonable care under the circumstances and was negligent.

112. More specifically, Defendants failed to properly identify, label, handle, store, cryopreserve, thaw and transfer Plaintiffs' embryos.

113.     Plaintiffs' genetic materials and the resulting embryos remained in the custody, care and control of Defendants at all times.

114.     On August 20, 2018, Defendants, its agents, and/or employees failed to properly transfer the Plaintiffs' own embryos to Plaintiff A.P.

115.     On August 20, 2018 Defendants, its agents, and/or employees, negligently transferred embryos to Plaintiff A.P. which were made up of the genetic materials of Couple A and Couple B.

116.     As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered damages, including but not limited to, loss of embryos belonging to them and the loss of two children born to Plaintiff A.P.

117.     Plaintiffs' damages would not have occurred but for the negligence of Plaintiffs.

118.     Plaintiffs did not cause or contribute to the Defendants' actions and the resulting damages.

119.     Plaintiffs will rely on the doctrine of res ipsa loquitur in proving their claims.

120.     As a further direct and proximate result of Defendants' negligence, Plaintiffs sustained financial loss and severe emotional distress and will continue to suffer emotional distress and financial loss.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

### THIRD COUNT
#### *Negligent Infliction of Emotional Distress*

121.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

122.     Defendants negligently transferred embryos into Plaintiff A.P. that was not Plaintiffs' genetic material.

123.     Defendants' negligent conduct in connection with Plaintiffs' IVF was extreme and outrageous, and in a manner in which they knew, or should have known, would result in Plaintiffs' severe emotional distress.

124.     Plaintiffs' injuries and damages are the direct and proximate result of the Defendants' conduct and as such, has inflicted emotional distress upon the Plaintiffs.

125.     As a result of Defendants' conduct, Plaintiffs have and will continue to suffer severe emotional distress, as well as the financial damages associated therewith.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

### FOURTH COUNT
### *Intentional Infliction of Emotional Distress*

126.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

127.     Defendants negligently transferred embryos into Plaintiff A.P. that was not Plaintiffs' genetic material.

128.     During Plaintiff A.P.'s pregnancy, Plaintiffs inquired of Defendants about the potential risk that an error occurred during the IVF process.

129.     Defendants intentionally concealed from Plaintiffs the possible risks associated with the procedures performed by the Defendants and/or the fact that an error occurred.

130.     Defendants conduct was extreme and outrageous and Defendants knew, or should have known, would result in Plaintiffs' severe emotional distress.

131.     Plaintiffs' injuries and damages are the direct and proximate result of the Defendants' conduct and as such, has inflicted emotional distress upon the Plaintiffs.

132.     As a result of Defendants' conduct, Plaintiffs have and will continue to suffer severe emotional distress, as well as the financial damages associated therewith.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

### FIFTH COUNT
### *Reckless and Wanton Misconduct*

133.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

134.     Defendants' conduct is indicative of its reckless disregard for Plaintiffs' rights and reasonable expectations and for the consequences of its actions.

135.     The injuries and damages suffered by the Plaintiffs are the direct and proximate result of the Defendants' reckless business practices, which caused significant harm to the Plaintiffs and will likely continue to cause harm and financial loss to the plaintiffs in the future.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

### SIXTH COUNT
### *Breach of Contract*

136.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

137.     On or about January 9, 2018, Plaintiffs entered into a contract with the Defendants for IVF treatment.

138.     At all times, Plaintiffs preformed in accordance with their obligations under the contract with Defendants.

139.     Defendants had a contractual duty to Plaintiffs to perform the procedures as agreed upon and as memorialized in the medical intake records, the parties' agreements, and intentions.

140.     Defendants materially breached its obligations.

141.     As a result of said breach, Plaintiffs have suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## SEVENTH COUNT
### *Breach Implied Covenant of Good Faith and Fair Dealing*

142.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

143.     In every contract there is an implied covenant of good faith and fair dealing which encompasses any promise that reasonable person would be justified in understanding was included in the contract.

144.     Defendants' conduct constitutes a breach of the implied covenant of good faith and fair dealing, resulting in damages to the plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit,

attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## EIGHTH COUNT
### *Breach of Fiduciary Duty*

145.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

146.     As Plaintiffs were patients of Defendants, Defendants were in a position of trust and confidence with respect to Plaintiffs' care in order to conceive children utilizing Defendants' fertilization services.  Plaintiffs knew little or nothing about IVF and, as a result, placed great reliance, faith and confidence in the advice and acts of Defendants.

147.     Defendants had a fiduciary duty to Plaintiffs to collect, store, thaw and transfer Plaintiffs' embryos with the correct identification.

148.     Defendants further had a fiduciary duty to exercise good faith in advising the Plaintiffs on the progress of the fertility services rendered.

149.     Defendants breached the fiduciary duties owed to the Plaintiffs by failing to, among other things, collect, store, thaw and transfer Plaintiffs' embryos with the correct identification.

150.     Defendants further breached their fiduciary duty by failing to act in good faith during the IVF process, and including when Plaintiffs communicated with them at the three and five-month sonogram.

151.     As a direct and proximate result of the breach of the fiduciary duty, Plaintiffs have incurred substantial damages, including financial losses.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## NINTH COUNT
### *Violations of Consumer Protection from Deceptive Acts & Practices*
### *NY Gen. Bus. §§ 349 and 350 et seq.*

152.    Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

153.    Sections 349 and 350 of New York's General Business Law protects consumers by prohibiting all deceptive acts and practices, including false advertising, in the conduct of any business, trade or commerce or in the furnishing of any service in the State.

154.    Defendants' advertising and services are directed towards consumers in that Defendants routinely and regularly advertise their services to residents throughout the United States, including residents living within the State of New York, as well as in other countries.

155.    Defendants' advertising and services were directed towards the Plaintiffs and resulted in Plaintiffs retaining and utilizing Defendants services, and Defendants corresponding acts and practices violated New York's General Business Law including by:

    a.    Representing that their services, processes, and procedures had characteristics, uses, and benefits they did not have;

    b.    Representing that their services, processes, and procedures were of a particular standard, quality, or grade, when they were not;

    c.    Representing that their services, processes, and procedures had success rates that they did not have; and

    d.    Advertising services with the intent not to sell them and/or render them as advertised.

156.    Defendants' conduct and activities were deceptive, fraudulent, false and misleading, and thereby constitute violations of Sections 349 and 350 New York's General Business Law.

157.     Plaintiffs have suffered substantial injuries as a direct result of Defendants' deceptive, fraudulent, false and misleading conduct.

158.     Defendants' conduct has caused, and will continue to cause, irreparable injury to Plaintiffs.

159.     Defendants' conduct as set forth herein was reprehensible and constitutes numerous violations of law, including New York's General Business Law(s), and must be punished in accordance with the full protections offered under New York's General Business Law(s), including by punitive damages and exemplary damages in order to deter such conduct in the future, with said amounts to be determined. Defendants' reprehensible conduct also entitles Plaintiffs' to an award of attorneys' fees, with said amount to be determined.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants for compensatory damages, treble damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

### TENTH COUNT
#### *Misrepresentation*

160.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

161.     Throughout the parties' relationship, Defendants made certain misrepresentations to Plaintiffs, without regard to the truthfulness of the statements, including but not limited to, representations that Defendants would properly identify, store and transfer Plaintiffs' embryos to Plaintiff A.P.

162.     Plaintiffs reasonably relied upon the statements of Defendants that Defendants would properly transfer Plaintiffs' embryos to Plaintiff A.P. as Defendants held themselves out as

experts in the field of fertility services, causing Plaintiffs to enter into a contractual and fiduciary relationship with Defendants for fertility services.

163.     As a result of Defendants' misrepresentations, Plaintiffs have sustained damages, and continue to sustain damages, including the loss of embryos, as well as the uncertainty as to the location of their embryos and the status of the alleged remaining embryos.

164.     Plaintiffs also sustained damages in connection with the IVF process, pre-natal and obstetrical treatment, as well as additional expenses related to the birth, custody and loss of custody of Baby A and Baby B.

165.     As a result of the Defendant's misrepresentations, the Plaintiffs may never know what happened to their embryos, as well as whether the currently cryopreserved embryos are genetically matched to them.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

### ELEVENTH COUNT
#### *Breach of Duty to Disclose*

166.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

167.     Defendants were in a fiduciary relationship with Plaintiffs as Defendants rendered medical and fertility services to Plaintiffs.

168.     At all times, Defendants possessed superior knowledge of fertility services, pregnancy and embryo storages as compared to Plaintiffs.

169.      Prior to the start of Plaintiffs' IVF and at all times during the pregnancy, Defendants had an affirmative duty to disclose all risks associated with the procedures, including the risk that Defendants could transfer or had transferred other individuals' embryos into Plaintiff A.P.

170.      Defendants intentionally did not disclose the risk of an error in transfer to Plaintiffs, despite repeated requests for information and inquiries by Plaintiffs before and during Plaintiff A.P.'s pregnancy.

171.      As a direct and proximate result of Defendants' breach of duty the Plaintiffs have suffered significant harm including financial loss and emotional distress and will continue to suffer these losses for which the Defendants are liable.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants for compensatory damages, treble damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## TWELFTH COUNT
### Breach of Duty to Obtain Informed Consent

172.      Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

173.      Defendants had an affirmative duty to obtain informed consent from the Plaintiffs regarding the procedures, risks and/or unfavorable potential outcomes that could occur, and in fact did occur, that a reasonable medical practitioner would have disclosed in the same circumstances.

174.      Plaintiffs would reasonably have not undergone the procedure had Plaintiffs been fully informed of the risks.

175.     As a direct and proximate result of Defendants' breach of duty, Plaintiffs have suffered significant harm including financial loss, emotional distress and attorneys' fee and will continue to suffer these losses for which the Defendants are liable.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## THIRTEENTH COUNT
### *Bailment*

176.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

177.     Plaintiffs delivered to Defendants for safekeeping irreplaceable personal property to be safely and securely kept for the benefit of Plaintiffs, and to be redelivered to them upon demand.

178.     Plaintiffs agreed to pay, and did pay, substantial sums in exchange for Defendants' promise to safeguard their embryos for the benefit of Plaintiffs.

179.     Defendants received embryos from Plaintiffs on this condition.

180.     Defendants had a duty to exercise care in identifying, maintaining, and protecting Plaintiffs' embryos that were delivered to Defendants. Further, Defendants had a duty to ensure that the Plaintiffs' return the embryos, undamaged, to Plaintiffs, to whom the embryos belonged.

181.     Defendants invited the general public, including Plaintiffs, to entrust embryos to Defendants' care by holding out CHA Fertility as "the world's first commercial egg bank where our laboratory stores eggs from egg freezing procedures (oocyte cryopreservation) as well as frozen embryos and sperm." Defendants also stated that "our lab is also solely dedicated to fertility services for the utmost in patient focus." See www.chaivf.com

182.      Because of Defendants' wrongful conduct, as set forth herein, the irreplaceable property of Plaintiffs was wrongfully transferred, precluding its redelivery to them as provided for under the bailment contract.

183.      Defendants breached their duty to exercise care in the safekeeping and accurate identification of Plaintiffs' embryos delivered to Defendants and to return the embryos to Plaintiffs.

184.      On information and belief, Defendants have failed to properly ensure accurate identification policies and procedures at CHA Fertility/Comprehensive such that Plaintiffs' remaining embryos have not been properly identified and cannot be returned for the benefit of Plaintiffs.

185.      Defendants breached their duty to exercise care in the proper identification and segregation of Plaintiffs' embryos from other embryos entrusted to CHA Fertility/Comprehensive.

186.      As a direct and proximate result of Defendants' breaches of bailment contract, Plaintiffs have been deprived of the opportunity to use the embryos they entrusted to Defendants, and have suffered damages in an amount to be determined at trial.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## FOURTEENTH COUNT
### *Battery*

187.      Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

188.     Plaintiff A.P. consented to the transfer of embryos made up of her and Plaintiff Y.Z.'s genetic material only.

189.     Despite this specific consent, Defendants transferred two embryos that did not contain the genetic material of Plaintiff A.P. or Plaintiff Y.Z.

190.     Plaintiff A.P. did not consent to the transfer of embryos that were not genetically related to her and/or Plaintiff Y.Z.

191.   As a result of the foregoing, Plaintiffs have been damaged.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## FIFTEENTH COUNT
### *Conversion*

192.     Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

193.     On or about August 20, 2018, Defendants thawed two female embryos for transfer to Plaintiff A.P.

194.     The two female embryos were specifically designated to be transferred to Plaintiff A.P. and for no other purpose.

195.   The two female embryos were not transferred to Plaintiff A.P.

196.     Defendants have converted Plaintiffs' property against their instructions and/or wishes and without Plaintiffs' consent to same.

197.     As a result, Plaintiffs have lost the use and benefits of the two female embryos and will have no ability to recover same.

198.   As a result of the foregoing, Plaintiffs have been damaged.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, and statutory penalties, together with interest and costs of suit, attorney's fees, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## SIXTEENTH COUNT
### *Deceit and Fraudulent Concealment*

199.      Plaintiffs repeat each and every allegation set forth above, as if set forth more fully herein.

200.      Defendants marketed and promoted their services and made representations to the public and to Plaintiffs that they were experts in IVF services and the associated cryopreservation, had state-of-the-art facilities, and would safely preserve and store Plaintiffs' eggs and embryos according to certain protocols and standards until they were ready to use them.

201.      Defendants' representations were false, and Defendants either knew the truth of made the representations without regard for the truth.

202.      Defendants intended for Plaintiffs to rely on their representations and engage Defendants to perform services to preserve Plaintiffs' eggs and embryos, and Plaintiffs reasonably relied on Defendants' representations when availing themselves of Defendants' services for egg and embryo storage.

203.      Defendants intentionally suppressed and concealed materials facts concerning the adequacy of its storage policies and processes.  Defendants knew or reasonably should have known their storage policies and processes were inadequate to protect Plaintiffs' eggs and embryos.

204.      Plaintiffs had no reasonable means of knowing Defendants' storage policies and processes were inadequate or that Defendants' representations about such policies and processes were incomplete, false, or misleading in that they failed to disclose such inadequacies.  Plaintiffs did

not and reasonably could not have discovered Defendants' deception prior to agreeing to undergo IVF services at their facility.

205.     Defendants had ample means and opportunities to alert or warn Plaintiffs to the fact that their storage policies and processes were inadequate.

206.     Defendants were under a duty to disclose that their storage policies and processes were inadequate given their exclusive knowledge of the inadequacies.

207.     Plaintiffs reasonably relied to their detriment upon Defendants' material omissions regarding the adequacy of their storage policies and processes.  Plaintiffs were unaware of the omitted materials facts and would not have acted as they did had these facts been disclosed.  Had Plaintiffs known that Defendants' storage policies and processes were inadequate to protect against damage to their eggs and/or embryos, they would not have purchased such services.

208.     Plaintiffs sustained damage as a direct and proximate result of Defendants' deceit and fraudulent concealment.

209.     The foregoing acts and omissions of Defendants were committed maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiffs' rights, interests, and well-being to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## PRAYER FOR RELIEF

Plaintiffs incorporate by reference each and every paragraph of this Complaint as through set forth here in full and further pray:

210.    So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

a.  All available compensatory damages for the described losses with respect to each cause of action;

b.  Past and future medical expenses, as well as the cost associated with past and future life case;

c.  Past and future lost wages and loss of earning capacity;

d.  Past and future emotional distress;

e.  Consequential damages;

f.  All available noneconomic damages, including without limitation, pain suffering, and loss of enjoyment of life;

g.  Disgorgement of profits obtained through unjust enrichment;

h.  Punitive damages with respect to each cause of action;

i.  Attorney's fees;

j.  Costs of this action;

k.  Pre-judgment and all other interest recoverable; and

l.  Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiffs, A.P. and Y.Z., demand a trial by jury on all of the triable issues of this complaint.

FRIER & LEVITT, LLC

Michelle L. Greenberg, Esq.
Jonathan E. Levitt, Esq.
*Attorneys for Plaintiffs*
84 Bloomfield Avenue
Pine Brook, NJ  07058
phone: (973)618-1660
fax: (973)618-0650
email:  mgreenberg@frierlevitt.com

DATED: July 1, 2019

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

A.P and Y.Z,

                      Plaintiffs,

    v.

CHA HEALTH SYSTEMS, INC.,
COMPREHENSIVE HEALTH FOR ALL
FERTILITY MEDICAL GROUP, INC., CHA
HEALTH SYSTEMS, INC., D/B/A CHA
FERTILITY CENTER LOS ANGELES, CHA
FERTILITY CENTER LOS ANGELES,
JOSHUA J. BERGER, M.D., SIMON HONG,
PH.D., DOES 1 to 20, and ABC CORP. 1 to 20,
inclusive,

                      Defendants.

**CERTIFICATE OF MERIT**
**PURSUANT TO**
**CPLR 3012-a**

STATE OF NEW JERSEY    )
                           ) ss:
COUNTY OF MORRIS     )

      **MICHELLE L. GREENBERG,** being duly sworn, deposes and says:

      I am making this Certificate of Merit pursuant to CPLR 3012-a.

      I have reviewed the facts of this case with at least one physician licensed to practice medicine in the State of New York and which physician I reasonably believe is knowledgeable in the issues involved in this case.

      Based upon the facts as related to me and as discussed with the physician, and based upon the information presently in my possession, on the basis of that consultation I believe there is a reasonable basis for the commencement of this action.

                                      **Michelle L. Greenberg, Esq.**

Sworn to before me this
July 1, 2019

_____
Notary Public

**BETHANY A. KELLY**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires 12/19/2022**

1